

**Seth R. Goldman**
212 692 6845
srgoldman@mintz.com

Chrysler Center
666 Third Avenue
New York, NY 10017
212 935 3000
mintz.com

June 4, 2021

**VIA ECF**
The Honorable Lorna Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

    **Re:**    *Actava TV, Inc. v. Matvil Corporation d/b/a/ eTVnet* **(1:21-cv 03027)(LGS)**

Dear Judge Schofield:

    Pursuant to Your Honor's May 28, 2021 Order (Dkt. 18), Matvil Corporation ("Matvil") submits the following pre-motion letter as set forth in Your Honor's Individual Rules III.C.2. Additionally, Matvil proposes that: i) Matvil file its moving brief by July 2, 2021; ii) Actava file its opposition brief by August 6, 2021; and iii) Matvil file its reply brief by August 20, 2021.

    **A. Case Background**

    Matvil, a licensed broadcaster of Russian language television, entered into the Referral Agreement with Actava on September 8, 2016. By way of that agreement, Actava agreed to market Matvil's services, and in return Matvil agreed to share revenues from customers Actava referred as set forth therein. The Referral Agreement was to remain in effect for 24 months – or until September 8, 2018 – and would not renew if cancelled or terminated by either party. Matvil had the right to terminate the agreement if, *inter alia*, after 10-day notice Actava failed to cure a material breach.

    On July 23, 2018, Actava sued several key copyright holders with whom Matvil had license agreements, threatening both Matvil's license agreements and its continued partnership with those entities. Actava did not notify Matvil of its intent to file (or actual filing of) such a lawsuit, although Actava undoubtedly knew – and surely considered – the serious ramifications that would befall Matvil upon the commencement of such a suit.[1] That lawsuit, *Actava TV, Inc., et al. v. Joint Stock Company "Channel One Russia Worldwide" et al.* (18-cv-06626)(ALC)(KNF) (the "First-Filed Action"), has now been pending for nearly three years and is currently at the summary judgment stage.

    Upon learning of Actava's lawsuit against Matvil's business partners, Matvil immediately requested that Actava withdraw its suit. On August 2, 2018, Matvil again requested that Actava withdraw its lawsuit against Matvil's business partners, this time further advising that it would terminate the Referral Agreement within 10 days if Actava failed to cure its breach. Actava refused to do so, prompting Matvil's termination of the Referral Agreement effective August 13, 2018.

    The First-Filed Action includes, *inter alia*, a claim by Actava against Matvil's business partners for tortious interference with its relationship with Matvil (which existed only by way of the Referral Agreement) and damages resulting therefrom.[2] As part of that action, in late 2019, Actava sought – and obtained – letters rogatory for non-party Matvil, and after seeking to enforce the letters rogatory in Canada, Matvil agreed to submit to a non-party deposition concerning Matvil's conversations with defendants in the First-Filed Action concerning the termination of the Referral Agreement. Subsequently, Actava has sought to expand the scope of its original letters rogatory to include a continued deposition of non-party Matvil on the operation of the Referral Agreement as well; Matvil is currently considering that request.

---

[1] Matvil has, in fact, now suffered many of those very consequences, including strained relationships with its current partners, increased licensing fees, and prospective copyright holders declining to enter into licensing agreements with Matvil.

[2] While Actava asserts that its claim is for tortious interference with prospective economic advantage as opposed to tortious interference with a contract, in situations like this one, that is a distinction without a difference. *See Insurent Agency Corp. v. Hanover Ins. Co.*, No. 16 Civ. 3076 (LGS), 2018 U.S. Dist. LEXIS 140922, at *17 (S.D.N.Y. Aug. 20, 2018) ("New York courts have placed some limits on what constitutes business relations by rejecting, for example, a claim containing only a general allegation of interference with customers *without any sufficiently particular allegation of interference with a specific contract or business relationship*[.]") (internal quotations omitted) (emphasis added). Actava is, in actuality, seeking damage stemming from the termination of the Referral Agreement. *See e.g.*, First-Filed Action, Dkt. 352, at p. 1 (Plaintiffs allege that Defendants committed tortious interference by, *inter alia* "wrongfully inducing Matvil, Actava's business partner, to terminate its Referral Agreement with Actava.").

Actava has now also initiated the instant lawsuit against Matvil for its alleged breach of the Referral Agreement – the same subject matter at the heart of its tortious interference claim in the First-Filed Action. *See also* First-Filed Action, Dkt. 361 at 12:3-8 (Actava's counsel: "The theory of our case, as confirmed by the plaintiffs' damages expert, is that the contempt motion itself by the defendants interfered with the relationship between Actava and Matvil that was known as the Referral Agreement and which was producing revenue for both Matvil and Actava at the time"). Since the claims in both this action and the First-Filed Action substantially overlap, and Actava seeks to redress the same alleged harm in both actions, Matvil submitted a pre-motion letter to Your Honor seeking a stay of this action pending the resolution of the First-Filed Action. Dkt. 14. Actava responded on May 18, 2021 (Dkt. 16); Matvil's stay request is currently pending.

### B. Legal Grounds for Matvil's Motion to Dismiss

In the event Your Honor does not grant Matvil's requested stay, Matvil intends to move to dismiss Actava's Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6). Specifically, Matvil intends to argue that Actava's substantive causes of action for unjust enrichment and breach of contract are insufficiently plead, as too are its claims for attorney's fees and punitive damages.

#### i. Unjust Enrichment

To plead unjust enrichment, Actava "must allege that: "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff." *Milligan v. Geico Gen. Ins. Co.*, No. 16-cv-240 (DLI)(RML), 2020 U.S. Dist. LEXIS 183360, at *29 (E.D.N.Y. Sept. 30, 2020) (citation omitted). Actava has failed to allege that there is any bona fide dispute as to the existence of a contract that governs the parties' relationship, or that Matvil has inequitably retained a benefit at the expense of Actava.

*First*, "[u]njust enrichment is a 'quasi-contract claim[]' that exists only 'in the absence of any agreement.'" *Milligan*, 2020 U.S. Dist. LEXIS 183360, at *29 (quoting *Beth Israel Med. Crt. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Here, where there is no dispute that the parties had a valid and enforceable agreement, an unjust enrichment claim cannot lie. Compl., ¶ 1 (conceding enforceability of the Referral Agreement); *Milligan*, 2020 U.S. Dist. LEXIS at *31 ("Where, as here, there is no dispute over the existence of an enforceable agreement, an unjust enrichment claim merely is duplicative of a breach of contract claim and must be dismissed."); *Fashionwear (PVT) Ltd. v. Regatte (U.S.A.) LLC*, No. 03 Civ. 5597 (JFK), 2004 U.S. Dist. LEXIS 19769, at *9-10 (S.D.N.Y. Sept. 29, 2004) ("[W]here there is already an express contract to render such services to a party, an implied contract is not formed.").[3] To the extent Actava is even arguably entitled to any continued referral fees, and it is not, such fees would be limited to those set forth in the Referral Agreement. *See* Referral Agreement, Art. 5 (outlining provision for referral fee and referencing formula to calculate same).

*Second*, Actava cannot plausibly claim that it would be inequitable for Matvil to retain the benefit of the customers referred by Actava over the course of the parties' relationship. The Referral Agreement – which Actava voluntarily signed – explicitly lays out what financial obligations are owed by either party in the event that the Referral Agreement is terminated or cancelled. *See* Referral Agreement, Arts. 2 (c), (d), 3 (expressly contemplating the parties' financial obligations in the event the contractual relationship ends, and how such financial obligations should be calculated). That the very result for which Actava negotiated is somehow inequitable – *i.e.*, what Actava would be owed in the event the Referral Agreement ended, however that end came about – fails the basic test of logic. It stands to reason that if the cancellation or termination provisions in the Referral Agreement were inequitable, Actava, through its counsel, would never have agreed to them. Put simply, it cannot be inequitable for Actava to be bound by the specific limitations to which it agreed in the Referral Agreement.

#### ii. Attorney's Fees

Under New York law, a party is not entitled to attorney's fees "absent a contractual or statutory provision providing for the award of attorney's fees." *Fashionwear (PVT) Ltd.*, 2004 U.S. Dist. LEXIS 19769, at * 10. Here, there is indisputably no statute that allows for Actava's recovery of attorney's fees, nor are such fees recoverable under the Referral Agreement.

In the Complaint, Actava fails to point to any provision of the Referral Agreement whereby it would be entitled to recover attorney's fees for the claims it has asserted in this action. Nor is there any. Actava's claim for attorney's fees, therefore, must be dismissed. *See Fashionwear (PVT) Ltd.*, 2004 U.S. Dist. LEXIS 19769, at *11 (granting motion to dismiss where plaintiff "has not alleged any contractual or statutory basis for an award of attorney's fees in this case.").

In fact, the only time attorney's fees are mentioned in the Referral Agreement is in the context of indemnity which, "absent clear evidence to the contrary," "only applies to the cost of litigation *with third parties and not to the cost of litigation between the parties themselves*." *See Fernandez v. Kinray, Inc.*, No. 13-CV-4938 (ARR)(SMG), 2014 U.S. Dist. LEXIS 17954, at *12 (E.D.N.Y. Feb. 5, 2014) (emphasis added). Moreover, the parties contemplated that Matvil would indemnify Actava for claims *only* that arose from Actava's "provision of the Service Offerings" set forth in the Agreement, namely suits which arose from Actava's promotion of Matvil's IPTV and other services. *See* Referral Agreement Art. 15 (d) – (e) (providing for indemnification, including attorney's fees and costs, "arising out of, connected with, or resulting from" the Service Offerings or Services set forth in the Referral Agreement). In other words, the indemnification provisions do not cover Actava's calculated decision to undermine the viability of Matvil's business, and Matvil's decision to terminate the Referral Agreement as a result. *See Fernandez*, 2014 U.S. Dist. LEXIS 17954, at *12. As such, the indemnification provisions in the Referral Agreement cannot arguably be said to extend to this action.

#### iii. Punitive Damages

---

[3] Indeed, a party can only plead both breach of contract *and* unjust enrichment where the parties dispute the existence of a valid contract or where "there is an issue in dispute that the agreement does not cover". *Fashionwear (PVT) Ltd.*, 2004 U.S. Dist. LEXIS 19769, at *10. That is not the case here.

Actava has also failed to meet the high bar to sufficiently plead punitive damages. Specifically, it has failed to allege any tortious conduct, or come close to alleging any sort of morally reprehensible conduct that could possibly warrant punitive damages. *See Purdy v. Consumers Distributing Co.*, 648 F. Supp. 980, 983-84 (S.D.N.Y. 1986) (dismissing claim for punitive damages where plaintiff did not allege a separate tort claim and failed to "show that the conduct complained of was not an isolated private wrong, but rather a morally culpable course of conduct aimed at injuring the public generally."). Accordingly, Actava's request for punitive damages must be dismissed.

### iv. Breach of Contract

Actava has also failed to state a claim for breach of contract under New York law, which requires Actava to plead: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Swan Media Grp., Inc. v. Staub*, 841 F. Supp. 2d 804, 807 (S.D.N.Y. 2012) (citation omitted). Actava has failed to sufficiently allege its own adequate performance under the contract, breach by Matvil or damages.

*First*, apart from a single conclusory statement that it "performed its duties under the Referral Agreement," Actava has failed to allege its own adequate performance under the contract. Compl., ¶ 49. That is insufficient to sustain a claim for breach of contract. *See Swan Media Grp., Inc.*, 841 F. Supp. 2d at 808 (dismissing breach of contract claim because "Plaintiff . . . failed to sufficiently allege its adequate performance under the Agreement, a required element under New York law.") That is especially true here, considering that Actava has already conceded that "[t]he filing of the Contempt Motion [by Matvil's business partners] caused Actava to voluntarily cease performance under the Referral Agreement." *See* First-Filed Action, Dkt. No. 121, p. 9, citing Actava's First Amended Complaint, ¶ 73. In light of Actava's admission that it voluntarily ceased performance under the Referral Agreement, its conclusory statement that it adequately performed under the Referral Agreement is entirely insufficient. *See Swan Media Grp., Inc.*, 841 F. Supp. 2d at 808 (plaintiff's conclusory statement that it "has performed all of its obligations under the Agreement" insufficient to allege adequate performance thereunder, "a required element under New York law").

*Second*, Actava alleges that Matvil breached the Referral Agreement by failing to pay Actava a cancellation fee pursuant to Art. 2(d). Compl., ¶¶ 2, 47-51. But Matvil does not, as a matter of law, owe Actava a cancellation fee pursuant to Art. 2(d) of the Referral Agreement because it did not cancel the Referral Agreement, and a cancellation fee is only required "[i]n case of cancellation." Referral Agreement, Art. 2(d).[4] Instead, Matvil terminated the Referral Agreement, as it was entitled to do when Actava failed to remedy its material breach upon written notice from Matvil. *See* August 2, 2018 Letter from David G. Lison to Toby Butterfield, titled "Notice of Breach of Referral Agreement dated August 8, 2016 between Matvil Corporation and Actava TV, Inc." More specifically, Actava failed to withdraw the lawsuit it commenced against Matvil's business partners, threatening Matvil's licensing arrangements with those business partners, and therefore its very existence. *Id*. Actava's conscious decision to pursue its lawsuit after receiving written notice from Matvil of its breach and knowing the adverse implications it would have on Matvil, entitled Matvil to terminate the Referral Agreement. *See* Referral Agreement, Art. 2(b)(ii) (allowing Matvil to terminate the agreement "in the event of a suspected breach" upon 10 days written notice if said breach is not cured); 2(b)(iv) (allowing Matvil to terminate the agreement upon 10 days written notice in the event of Actava's "gross negligence or willful misconduct"). As such, since the Referral Agreement was terminated and not cancelled, Matvil cannot be said to owe Actava a cancellation fee as a matter of law. *See Wayland Inv. Fund, LLC v. Millenium Seacarriers, Inc.*, 111 F. Supp. 2d 450, 455-57 (S.D.N.Y. 2000) (dismissing breach of contract claim under Rule 12(b)(6) where contract is clear and unambiguous).

*Third*, to the extent Actava can be said to have suffered any damages at all, it has failed to plead damages separate from those already at issue in the pending lawsuit Actava brought against Matvil's business partners, *i.e.*, the same one that precipitated Matvil's termination of the Referral Agreement: the First-Filed Action. Since it is black letter law that a party cannot recover twice for the same harm – and Actava has failed to allege harm separate from that at issue in the First-Filed Action – Actava has not sufficiently plead damages. *See Clarke v. Max Advisors*, 235 F. Supp. 2d 130, 141 (N.D.N.Y. 2002) ("the establishment of damages suffered is an essential element of a breach of contract cause of action."). Actava's claim for breach of contract must therefore be dismissed for its failure to plead this essential element of the claim.

Even if it had (and again it has not), Actava's alleged damages are completely unmoored from reality considering Actava earned approximately $160,000 over the lifetime of the Referral Agreement and now seeks over $1,000,000 of alleged harm it suffered in the approximately six weeks between Matvil's termination of the Referral Agreement and the expiration of the agreement's 24-month term.

Respectfully submitted,

Seth R. Goldman

---

[4] On a Rule 12(b)(6) motion to dismiss, a court may consider documents incorporated by reference in a complaint and "[i]f a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).